NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DIANA HUTCHINSON, | : | |
| Plaintiff, | : | Civil Action No. 02-5364 (JAG) |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| BENNIGAN'S/METROMEDIA RESTAURANT, INC; TODD SCULL and DOES 1-10, | : | |
|  | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on the motion for summary judgment by Plaintiff Diana Hutchinson ("Hutchinson") and the motion for summary judgment by Defendants Bennigan's/Metromedia Restaurant, Inc.[1] and Todd Scull ("Defendants"), pursuant to FED. R. CIV. P. 56. For the reasons set forth below, Defendants' motion will be granted and Plaintiff's motion will be denied.

### BACKGROUND

Plaintiff Diana Hutchinson began employment at the Bennigan's restaurant in Springfield, New Jersey in 1984. She worked in various positions in the kitchen until 1989, when she became a full-time host. She was later promoted to head host. Bennigan's terminated her employment on December 9, 2000, after a customer complained to Bennigan's management,

---

[1] Defendants state that Plaintiff has incorrectly named the restaurant Defendant, and that the correct entity is MRS Management Company, L.P. (Def.'s 56.1 Stmt. 2.)

alleging mistreatment by Hutchinson on December 8, 2000. Plaintiff admits that, "On December 8, 2000, two female guests . . . complained that they were being stared at inappropriately." (Pl. Br. Opp. S.J. 5.) The parties dispute whether the customer had a valid cause for complaint, but not that the customer complained. Bennigan's hired an African-American male, Hilton Cancel, to replace Plaintiff in the head host position. (Scull Dep. 230-31.)

Plaintiff filed a complaint in New Jersey state court in October of 2002; Defendants subsequently removed the case to federal court. In 2004, Plaintiff sought leave to file an Amended Complaint, which was granted. The Amended Complaint contains three claims, each related to the termination of Plaintiff's employment, under both Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination: 1) age discrimination (Plaintiff was 54 at termination); 2) national origin discrimination (Plaintiff claims Jamaican national origin); and 3) racial discrimination (Plaintiff is African-American).

On April 18, 2005, this Court entered an amended scheduling order, setting forth the briefing schedule for motions for summary judgment. Pursuant to the order, opening briefs were to be filed by June 17, 2005; opposition briefs were to be filed by July 15, 2005; and reply briefs were to be filed by August 19, 2005. The order specified that filing must be electronic (through CM/ECF). Both parties filed motions for summary judgment, with supporting briefs, by June 17, but only Defendants filed a brief in opposition by July 15.

On September 9, 2005, Plaintiff – represented by counsel – submitted an opposition brief to Defendants and a paper copy to the district court clerk. Electronic filing has been mandatory since January 31, 2005, and the Court specifically ordered electronic filing in the amended scheduling order, but Plaintiff did not electronically file the opposition brief. Plaintiff also

2

mailed a supplementary letter dated September 22, 2005 to Defendants and to the Court, but did not electronically file it.  On November 21, 2005, this Court ordered Plaintiff to file the opposition brief and the letter dated September 22, 2005 by December 1, 2005.  Plaintiff never complied with this order.  Nonetheless, because Defendants did receive these papers, and have been given the opportunity to submit a final brief in reply to them, the Court accepts the opposition brief and the letter of September 22, 2005 as part of the record before it on these motions.  On December 5, 2005, Defendants submitted their final brief in reply.

Defendants argue that, because no opposition to their motion has been filed, this Court should accept all facts in their statement of undisputed facts as true.  A number of courts in this district have held that when a party has failed to submit a statement of facts, as is required by Local Civ. R. 56.1, those facts that are not disputed are deemed admitted.  See. e.g., Longoria v. New Jersey, 168 F. Supp. 2d 308, 312 (D.N.J. 2001); SEC v. Chester Holdings, Ltd., 41 F. Supp. 2d 505, 516 (D.N.J. 1999).  These courts have not, however, gone so far as to deem admitted every fact in the moving party's statement of facts, but have limited the principle to facts not disputed in any  motion papers.  This Court deems admitted every fact in Defendants' statement of undisputed facts that is not disputed in any of Plaintiff's motion papers, including the late papers just described, or in the statement of undisputed material facts filed with Plaintiff's motion for summary judgment.  As a result of this ruling, as will be discussed infra, a set of facts regarding Plaintiff's job performance history is deemed admitted.

## LEGAL STANDARD

I.      **Summary Judgment**

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c).  See Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001).

> Federal Rule of Civil Procedure 56(c) provides, in relevant part,
>
> "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party "cannot simply reallege factually unsupported allegations contained in his pleadings."  Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81 (3d Cir. 1999).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the

4

mere allegations or denials of its pleadings.  See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980); Boyle v. Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## II.     Employment Discrimination: Disparate Treatment Claims

All disparate treatment[2] claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.  The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).  Moreover, the New

---

[2] A disparate treatment case is one in which "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

Jersey Supreme Court has adopted the McDonnell Douglas test for claims under all state proscriptions against discrimination, both statutory and constitutional. Peper v. Princeton University Board of Trustees, 77 N.J. 55, 83 (1978) (recommending use of the McDonnell Douglas test for all "actions brought under the Law Against Discrimination or any other State proscription against discrimination").

## DISCUSSION

### I.     Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on her employment discrimination claims, arguing that she has both made out a prima facie case for discrimination under McDonnell Douglas and shown that Defendants' reasons for her termination are pretextual. The motion for summary judgment also has one section heading, with one relevant paragraph of text, alleging a hostile work environment claim. (Pl. Br. Supp. S.J. 16.) This paragraph articulates no coherent argument about a hostile work environment and the issue cannot be cognized or adjudicated based on this presentation.

   A.     McDonnell Douglas Step 1: the Prima Facie Case.

"The burden of establishing a prima facie case of disparate treatment is not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). While McDonnell Douglas specifically addressed a case of hiring discrimination, "[t]he importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." Int'l Bhd. of Teamsters v. United States, 431 U.S.

324, 358 (1977).

"To establish a prima facie case of discriminatory discharge a Title VII plaintiff must show (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class." Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 (3d Cir. 1996). The Third Circuit has subsequently held that the fourth element is not required when the "evidence [is] adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Pivirotto v. Innovative Sys., 191 F.3d 344, 356 (3d Cir. 1999).

There is no dispute that Plaintiff has satisfied the first three elements under Sheridan: she is a member of a protected class, qualified for her position, and she was discharged. Because her position was ultimately filled by a member of the protected African-American class, Plaintiff has failed to make out a prima facie case of race discrimination. This conclusion comes not from mechanical application of the Sheridan requirements. Looking at the circumstances in their totality, Plaintiff has not presented evidence adequate to create an inference that her termination was based on race discrimination.

Nor has Plaintiff made out a prima facie case for discrimination based on Jamaican national origin. Neither party discusses whether or not her replacement was of Jamaican national origin. Plaintiff, however, has alleged no facts that would allow a reasonable inference that anti-Jamaican motives were at work in her termination – no less demonstrated that the evidence is so one-sided as to entitle her to summary judgment.

Neither party presents evidence establishing whether Plaintiff's replacement was or was not under the age of 40. This Court need not, however, determine whether Plaintiff has made out

a prima facie case of age discrimination. Even if this Court were to find that Plaintiff has satisfied the requirements for a prima facie case of age discrimination, Plaintiff's claim fails at the third step of the McDonnell Douglas analysis, as will be discussed further below.

      B.      McDonnell Douglas Step 2: the Employer's Response.

If this Court were to determine that Plaintiff has made out a prima facie case of age discrimination, the burden would then shift to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. Bennigan's has met this burden by presenting uncontroverted evidence on two key points: 1) Plaintiff was terminated immediately following a customer complaint about her; and 2) the customer complaint appeared in the context of a history of job performance problems. As noted above, the first of these points is undisputed.[3]

Defendants have offered considerable evidence that Plaintiff had a history of job performance problems:

- In her deposition, Shannon Hoppe stated that she had supervised Plaintiff at Bennigan's and had found her to be a problem employee "on occasion." (Stanton Cert. Ex. 2 at 119:13-15.) She explained:

    A: [E]verybody on occasion has a problem with Diana. . . . It was same issues [sic] being repeated.
    Q: What were the same issues?
    A: General customer service and politeness and courtesy and being absolutely 100% accommodating to all of our guests 100% of the time . . .

---

[3]Defendants presented evidence that: 1) the customer alleged that Plaintiff had discriminated against her on the basis of sexual orientation and raised the possibility of taking legal action against Bennigan's (Aguilucho Dep. 57, 78); and 2) manager Todd Scull believed that a serious violation of company policies had occurred. (Scull Dep. 208-209.) While Plaintiff contends that the customer's complaint was not valid, she does not dispute these assertions.

(Id. at 119-120.)

- Hoppe stated that she had observed other problem situations involving Hutchinson: 1) verbally fighting with a coworker at the host stand (Id. at 86); 2) yelling at another employee in the middle of the dining area during business hours (Id. at 143-144); and 3) conduct toward a restaurant area director that left the director "extremely upset at her disregard for his position." (Id. at 147.)

- Hoppe saw the December 8, 2000 customer complaint as the "final straw:"

    A:  [I]ssues like this had happened in the past and we just kind of go status quo with it although I think probably in the past she should have been let go for other issues and we didn't because we all loved Diana. She had been there for a long time . . . and we had accepted some things that maybe we shouldn't have and I guess I was just surprised that this was the final straw so-to-speak.

    (Id. at 134-135.)

- At his deposition, manager Todd Scull attested to: 1) a log entry regarding a guest complaint about Plaintiff in 2000 (Stanton Cert. Ex. 3 at 41-45; log page at Scull Dep. Ex. 2); 2) two guest opinion cards with complaints about employee behavior, one about "Diane" and one referring to the hostess, which Mr. Scull had linked to Plaintiff with schedule records (Stanton Cert. Ex. 3 at 71-72; cards at Scull Dep. Ex. 4, 5)[4]; and 3) an entry in the manager's log stating, "ALL - please watch the way Diana seats big parties. She put a 20 top @ table 31 and blocks the walk-way. This a fire hazard and she knows this. I talked to her but keep your eyes on her." (Stanton Cert. Ex. 3 at 264-267; log at

---

[4]At his deposition, Kenneth Stark stated that he had spoken with the customer who filled out the complaint card on "Diane" and believed the card to refer to Plaintiff. (Stanton Cert. Ex. 5 at 164-166.)

9

Scull Dep. Ex. 15.)

- At his deposition, area director and former general manager of the restaurant Steven Melillo stated that: 1) "I would receive a complaint . . . probably on Diana a couple times a year" (Stanton Cert. Ex. 4 at 142); 2) his insurance agent complained to him that Plaintiff's rudeness was such that he would no longer eat at the restaurant (Id. at 142-143); 3) "there were periods of time that she would be a very good employee . . . and then she would have a run-in with an employee or a guest and we would talk to her.  She would tell us she would fix it and she would fix it for a period of time and then we would have another one.  It was kind of an ongoing thing" (Id. at 145-146); 4) Plaintiff had "a very hard stare" and he felt she "would come across as less than hospitable" (Id. at 147); 5) he felt that she "would come across as abrasive or rude or short-tempered" (Id. at 148); and 6) her position was "high-stress" and he observed that, at times, she would "lose her patience."  (Id. at 149.)

- At his deposition, restaurant manager Kenneth Stark reported situations in which he observed that: 1) Plaintiff had yelled at coworker Jose (Stanton Cert. Ex. 5 at 154:20), which resulted in Stark filling out a disciplinary action form on February 29, 2000, stating that he had counseled Plaintiff on this incident and told her that, if it happened again, she would be sent home (Stanton Cert. Ex. 8 at 111-112; Stanton Cert. Ex. 8 at Ex. KS-5); 2) Plaintiff had yelled at a server (Stanton Cert. Ex. 5 at 155-157); 3) Plaintiff had yelled at a busboy (Id. at 158.)  Stark also: 4) characterized some of the yelling incidents as "berating" and "terrorizing" the staff (Stanton Cert. Ex. 8 at 72); and 5) reported that Plaintiff defied his direction to her to end her shift (Id. at 49-50.)

10

- Plaintiff admitted that she received verbal reprimands about "crashing" (seating too many guests too quickly) on a number of occasions.  (Stanton Cert. Ex. 9 at 519-520.)
- At her deposition, manager Michele Vitale reported that: 1) Plaintiff "would yell at servers" (Stanton Cert. Ex. 6 at 96); 2) Vitale once told Plaintiff to "tone it down" (Id. at 97); 3) Plaintiff was "very intimidating" (Stanton Cert. Ex. 7 at 43); 4) the way Plaintiff spoke could be "harsh" (Id.); and 5) when Vitale discussed a guest's complaint with Plaintiff, "she yelled at me at the door" (Id. at 46).  Vitale also attested to the authenticity of an entry in the Manager's Log from June 7, 2000: "Diana needs a talking to about screaming @ the DMO unless she wants to become one again."  (Vitale Cert. Ex. A.)
- Plaintiff's job evaluation reports documented a number of employment problems: 1) Plaintiff needed improvement in guest focus, with "opening door for guests entering and exiting" circled, and training ability, with comment, "adhearing [sic] to rules whether you agree or disagree" (Hutchinson Dep. Ex. DH-10); 2) on her September 1995 quarterly evaluation: "You are constantly bending the rules, usually when managers are not in the front of the house" and, under areas for improvement, "Your meandering up to the bar after 2:00 must stop!  Diana, the other day when I found you at the bar clipping your nails in front of a guest was appalling" (Hutchinson Dep. Ex. DH-11); 3) on her December 1995 quarterly evaluation: "Diana, I've noticed that the last few months of 1995 you've had moments of frustration that interfere with your performance" (Hutchinson Dep. Ex. DH-12); 4) her March 1996 evaluation describes performance as "uneven:" "When your down and not in the mood, your performance is below the standards that you know so well."  "You are not setting the right example for our newer hosts." (Hutchinson Dep. Ex.

11

DH-13.)

As discussed above, Defendants listed these factual allegations in the Statement of Undisputed Facts Pursuant to Local Civ. R. 56.1 submitted with their motion for summary judgment, and Plaintiff did not file any papers which specifically contest them.[5]  Rather, Plaintiff counters only with unsubstantiated allegations that Defendants have concocted fraudulent evidence.  In the Statement of Undisputed Facts submitted with her summary judgment motion, Plaintiff claims that "the document that states that she was yelling at Jose was dated 2002," when Hutchinson did not work at Bennigan's.  (Pl.'s 56.1 Stmt. ¶ 12.)  Plaintiff offers no documentary evidence to substantiate this claim, and the Disciplinary Action Form regarding the incident offered by Defendants is dated February 29, 2000.  (Stanton Cert. Ex. 8 Ex. KS-5.)

Plaintiff further alleges that the documentation of Plaintiff's misconduct by Kenneth Stark has dates that do not coincide with Stark's employment at Bennigan's in Springfield.  (Pl.'s 56.1 Stmt. ¶ 15.)  Plaintiff supplies nothing to substantiate this.  Plaintiff further alleges that "[m]ost of the evidences [sic] defendants used to justify their wrongful termination of plaintiff were done after they terminated her.  (Scull Dep. p. 69.)"  (Pl.'s 56.1 Stmt. ¶ 14.)  Page 69 of the Scull deposition does not substantiate this allegation.  Plaintiff's accusations that Defendants have fraudulently manufactured evidence are unsubstantiated and do not appear credible.

Defendants have offered substantial evidence that Plaintiff had a history of job performance problems and that her termination immediately followed a customer complaint

---

[5] As discussed supra, this Court deems that these factual allegations have been admitted by Plaintiff.  This ruling, however, has no effect on the outcome of these motions for summary judgment.  Because Plaintiff has not submitted evidence that creates a material factual dispute about her job performance history, whether these are considered to be admissions or facts proven by uncontroverted evidence, Defendants have established a history of job performance problems.

12

about her. Plaintiff has neither presented evidence creating factual disputes over either of these matters, nor even specifically challenged Defendants on the underlying facts. Bennigan's has carried its burden of articulating a legitimate, nondiscriminatory reason for its employment action.

      C.      McDonnell Douglas Step 3: Demonstrating Pretext.

At the third step of the McDonnell Douglas test, the burden shifts back to the Plaintiff to show that the reason articulated by the employer is not the true reason, but rather a pretext for discrimination. "[A] plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000). "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Plaintiff offers two arguments to show pretext. First, she uses the indirect approach to show that the employer's professed explanation is unworthy of credence. Here, she argues that she was a good employee for 16 years, and when a good employee who is a member of a protected class is suddenly fired because of a customer complaint, the employer's explanation is unworthy of credence. Second, she argues that similarly situated employees were not treated equally, and that this shows that the employer's explanation is pretextual.

### *1.    Is Defendants' Explanation Worthy of Credence?*

Plaintiff's argument that Defendants' explanation for her termination is unworthy of credence cannot succeed due to failure to establish the factual predicate. Plaintiff argues that, when a good long-time employee belonging to a protected class is suddenly fired because of a customer complaint, the employer's explanation is unworthy of credence. The success of this argument relies on the predicate of her having been a good employee.

As evidence of her good work history, Plaintiff points to: 1) the statement by manager Todd Scull that he had never had a problem with Plaintiff's work performance (Scull Dep. 124); and 2) the affidavit of Alan Standish, who stated that he had been Springfield general manager, had supervised Plaintiff for two years, and gave a positive appraisal of her work. (Standish Aff. ¶¶ 3-6.) Plaintiff offers this evidence to argue that she was an exemplary employee who had no history of job performance problems, but this evidence is insufficient to substantiate this assertion or create a material factual issue. Plaintiff does not dispute Defendants' specific factual assertions of Plaintiff's history of job performance difficulties. That some managers had no problem with her does not erase the fact that some managers did.

Plaintiff has the burden here of showing that the employer's stated explanation is a pretext for illegal discrimination. Showing that some managers had no problem with her work, without disputing the substantial evidence of job performance problems, neither creates a material factual dispute as to her job performance[6] nor raises the inference that the employer's

---

[6]At issue here is not whether Plaintiff was or was not an exemplary employee, and so Plaintiff's evidence does not create a factual dispute over a material issue. Rather, the material issue is whether Plaintiff's job performance history renders Defendants' stated explanation for her termination unworthy of credence. The evidence Plaintiff offers does not show a factual dispute over this question.

14

explanation is unworthy of credence and pretextual.

As Defendants have demonstrated, and Plaintiff has not rebutted, she was an employee with a long history of job performance problems. Because the underlying predicate of this line of argument is contradicted by the evidence, the argument fails. Plaintiff has not persuaded this Court that Defendants' explanation is unworthy of credence.

    *2.  Were Similarly Situated Employees Treated Equally?*

Plaintiff attempts to argue that former coworker Reid Reinhart was a similarly situated employee, not in a protected class,[7] who was not treated equally. This argument fails from the start because, while the evidence presented indicates that Reid Reinhart was an employee outside the protected class whose conduct resulted in a guest complaint, the undisputed evidence also shows that he was treated equally: like Plaintiff, he was immediately terminated. (Scull Dep. 103-4.) Contrary to Plaintiff's contentions, this is evidence weighing against her claim of pretext, since a similarly situated white employee was treated equally.

Plaintiff contends that other events in Reinhart's employment support her argument, but this is incorrect: none of the other incidents and characteristics are sufficiently similar to Plaintiff's circumstances to support a claim of being "similarly situated." First, Plaintiff points to the fact that Reinhart was subsequently rehired, but she does not even allege that she sought to be rehired. Second, Plaintiff alleges that Reinhart committed other misconduct that did not result in termination, including a "violent confrontation" with a coworker. (Pl. Br. 13.) Even if true, an incident resulting in a guest complaint is not similar enough to an incident of conflict with a coworker to support a claim of being similarly situated. "The plaintiff may assert a subjective

---

[7] A similarly situated employee, not in the protected class, is known as a "comparator."

15

belief that another's behavior is more serious, but unless it is the same conduct as the plaintiff's, the supposedly more serious act by the comparator is irrelevant." Gazarov v. Diocese of Erie, 80 Fed. Appx. 202, 206 (3d Cir. 2003); Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998) ("In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action"). Reinhart's alleged conflict with a coworker is not the same conduct as Plaintiff's, nor are any of the other alleged acts, and so they are all irrelevant and are excluded from the analysis of pretext.

Even if Reinhart were a valid comparator, use of a single comparator may not be sufficient to show discrimination. Simpson, 142 F.3d at 645 ("the mere favorable treatment of one younger manager as compared to one older manager may not be sufficient to infer age discrimination"). The ultimate inquiry is whether the decision to terminate was motivated by discrimination. Id. at 646. Plaintiff's arguments about Reid Reinhart do not persuade this Court that Bennigan's decision to terminate was motivated by discrimination.

### 3.   *Plaintiff's other evidence*

In support of her argument that Bennigan's explanation is pretextual, Plaintiff presents evidence relating to the interaction with the customer who complained. Plaintiff offers the affidavits of two coworkers who said that they observed Plaintiff interacting with the customer who complained, and that she did nothing wrong. Plaintiff offers the statement of Warren Mosley Holmes, who stated that he was working at the restaurant when the customers complained about Plaintiff, and that he had observed Plaintiff acting in a professional manner toward them. (Holmes Aff. ¶ 10.) He spoke with the customers, one of whom "complained to

me that everytime the two of them enter the restaurant, Diana gives them a dirty look.) (Id. at ¶ 13.) Holmes concluded that the guests were "probably mistaken" about Plaintiff. (Id. at ¶ 16.)

Plaintiff also offers the statement of Israel Jiminez, who stated that he was working at the restaurant on the night in question, observed Hutchinson with the customers who complained, and thought Plaintiff "acted very professionally and was quite nice to the customers." (Jimenez Aff. ¶ 11.)

These affidavits do not help establish that Bennigan's terminated Plaintiff for discriminatory reasons. For the purposes of the McDonnell Douglas analysis, it is not relevant whether the customer was right or wrong to complain; what matters is that the customer did make a complaint to management. Bennigan's argues that it terminated Plaintiff because she was a host, had a history of customer complaints about discourtesy, and was the subject of a customer complaint of discourtesy on December 8, 2000. Assuming, for the sake of argument, that the customer was wrong, it is insufficient to raise an inference that Bennigan's true motive for terminating Plaintiff was discriminatory.

Plaintiff failed to make out a prima facie case for employment discrimination due to race and national origin. Even if this Court were to find that Plaintiff made out a prima facie case of age discrimination, Plaintiff has failed to carry her burden of showing, at step 3 of the McDonnell Douglas test, that the employer's explanation for her termination is a pretext for age discrimination. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."

17

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citation omitted). Plaintiff has not done so. Her motion for summary judgment will be denied.

## II.     Defendants' Motion for Summary Judgment

Defendants move for summary judgment with a number of arguments. Defendants argue that: 1) Plaintiff's federal claims are procedurally defective due to untimeliness and failure to exhaust the national origin claim; 2) Plaintiff's claims against Scull are impermissible under Title VII; and 3) Plaintiff's claims fail as a matter of law under McDonnell Douglas.

The McDonnell Douglas analysis does not differ based on whether Plaintiff or Defendants make the motion for summary judgment on the question of illegal discrimination. The conclusions stated above are determinative of Defendants' motion as much as Plaintiff's: Plaintiff may have made out a prima facie case of age discrimination, but Defendants have articulated a legitimate, nondiscriminatory reason for the employment action, and Plaintiff has failed to offer evidence that would allow a reasonable factfinder to infer that any of the employer's proferred reasons were a pretext for discrimination. Defendants have shown the absence of any genuine issue as to material facts, and have demonstrated their entitlement to judgment as a matter of law, pursuant to FED. R. CIV. P. 56. Plaintiff has not offered evidence that raises a genuine issue as to any material fact that would allow her case to survive Defendants' motion for summary judgment. This Court determines that Defendants did not discriminate against Plaintiff on the basis of her race, national origin, or age. Defendants' motion for summary judgment will be granted.

Because this determination resolves the issues raised by Defendants' motion, this Court need not reach their other arguments.

## **CONCLUSION**

For the reasons stated above, this Court determines that, in terminating Plaintiff's employment, Defendants did not discriminate against Plaintiff on the basis of her age, race, or national origin. Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: February 27, 2006